IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY,      ) | CV NO. 05-00412 DAE-BMK |
| ) | |
| Plaintiff,      ) | |
| ) | |
| vs.      ) | |
| ) | |
| MELISSA VIRTUE,      ) | |
| ) | |
| Defendant,      ) | |
| ) | |
| and      ) | |
| ) | |
| RUTH WOLDEMICAEL,      ) | |
| ) | |
| Intervenor-Defendant.      ) | |
| _____ ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION AND GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION

The Court heard Defendant Woldemicael's Motion for Summary

Judgment, which Defendant Virtue joined, and Plaintiff's Motion for Summary

Judgment on November 20, 2006.  J. Thomas Weber, Esq., appeared at the hearing

on behalf of Plaintiff; Michael Crisera, Esq., appeared at the hearing on behalf of

Defendant Woldemicael; and David Kaapu, Esq., and Randall Yamamoto, Esq.,

appeared at the hearing on behalf of Defendant Virtue.  After reviewing the

motions and the supporting and opposing memoranda, the Court GRANTS in part and DENIES in part Defendant Woldemicael's Motion and GRANTS in part and DENIES in part Plaintiff's Motion.

BACKGROUND

On December 18, 2004, Dr. Ashley Ewen ("Decedent") died intestate in Washington State, leaving behind a surviving spouse, Defendant Ruth Woldemicael, and a sister, Defendant Melissa Virtue.  Decedent was a dentist who owned term life insurance coverage under a group policy ("the Policy") through Plaintiff, Great-West Life & Annuity Insurance Company.  The Policy was issued under the American Dental Association's ("ADA") group life insurance plan, which Great-West underwrites and administers.

On July 19, 2002, Decedent first applied for the Policy.  The Policy became effective on October 10, 2002 in the amount of $100,000.00.  Upon noticing that the Policy provided coverage of $100,000.00 only, Decedent contacted Plaintiff to increase his total coverage to $1,000,000.00 ("the Policy increase").  To increase Decedent's coverage, Plaintiff required Decedent to complete another application.  Decedent complied.  On February 4, 2003, the Policy increase became effective in the amount of $1,000,000.00.  The policy number (#316718) and the "Certificate Effective Date" on the policies (October 10,

2002) remained the same, even though the "effective date" of the Policy increase is noted as February 4, 2003, under the heading "Benefit Information" on the same page as the Certificate Effective Date.

About fourteen years before Decedent applied for the Policy, he experienced a manic episode, for which he was hospitalized and treated with low doses of lithium. Decedent did not disclose this information in his application for the Policy or for the Policy increase. After applying for the Policy and before applying for the Policy increase, in September 2002, Decedent was diagnosed with a bipolar condition. Decedent's treating physician, Dr. Ballard, considered Decedent's condition to be in remission, but Decedent continued to be treated with lithium until his death. Decedent did not disclose his bipolar diagnosis or his lithium treatment when he applied for the Policy increase following the diagnosis. Furthermore, Decedent did not disclose his father's history of heart disease or his mother's bipolar condition in the more detailed application required for the Policy increase.

On July 1, 2003, Decedent's coverage lapsed when he missed a premium payment. In October 2003, Decedent's coverage was reinstated retroactively upon his completion of a reinstatement application with the accompanying payment. In that application, Decedent had to respond to the

3

following statement: "I am in good health and currently do not suffer from any illness, disease or injury," to which he replied, "Yes, I am in good health."

On December 18, 2004, Decedent died of natural causes. After his death, Plaintiff investigated and denied Decedent's coverage. Following the denial, in a letter dated February 3, 2005, Plaintiff's Senior Claims Examiner, John Kingsbury, stated, "[a]s 90% of the insurance coverage was in force less than 24 months at the time of [Decedent's] death[,] it is contestable in accordance with the provisions of the policy. We have initiated a routine investigation and will keep you and the beneficiaries apprised of our progress concerning the matter."

On October 3, 2006, Plaintiff filed a Motion for Summary Judgment, arguing that the Policy is contestable and that Decedent made misrepresentations that justify rescission, which should be decided as a matter of law. On October 4, 2006, Defendant Woldemicael filed her Motion for Summary Judgment, arguing that Plaintiff may contest the Policy, and, two days later, Defendant Virtue joined Defendant Woldemicael's Motion. On November 2, 2006, all parties filed responses in opposition to the respective motions, and, on November 9, 2006, Defendant Woldemicael filed a reply to Plaintiff's opposition and Plaintiff filed a reply to each of Defendants' oppositions.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dept. of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts sufficient to establish what will be an essential element at trial. See id. at 323. The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A scintilla of evidence or

evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. Notwithstanding, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

Plaintiff contests the validity of Decedent's insurance coverage. Namely, Plaintiff asserts that the Policy coverage is contestable. Because Decedent failed to disclose his manic episode in the Policy and his bipolar condition and his family's health history in the Policy increase, Plaintiff argues that Decedent committed fraud and misrepresentation, thereby voiding the Policy. Additionally, Plaintiff seeks to dismiss Defendant Woldemicael's counterclaims

for failure to state claims upon which relief can be granted.  Defendants contend that neither the Policy nor the Policy increase are contestable because they fall outside of the statutorily prescribed time frame during which they could have been contested.  And, insofar as Plaintiff argues that the materiality of Decedent's alleged misrepresentation may be decided as a matter of law, Defendants disagree.

### A.  Estoppel and Rule 56(f) Continuance

Preliminarily, this Court finds no merit to Defendant Virtue's estoppel argument and declines to grant her Rule 56(f) continuance request before ruling on these motions.  First, Defendant Virtue argues that Plaintiff should be estopped from denying Decedent's insurance coverage because Plaintiff misrepresented the extent of coverage that Decedent could claim, thereby inducing Decedent to obtain coverage that did not cover his condition.  There is no need to determine whether Illinois law permits such a claim under Nationwide Mut. Ins. Co. v. Filos, 673 N.E.2d 1099, 1103-04 (Ill. App. Ct. 1996) because we find, in the first instance, that Plaintiff's marketing material did not misrepresent its coverage by marketing the first $25,000.00 in insurance coverage as free without mentioning any limitations concerning medical history and by marketing its insurance coverage as competitive and highly rated.

7

Second, this Court declines to grant Defendant Virtue's 56(f)

continuance to allow Defendant Virtue the opportunity to depose Plaintiff's

representatives before ruling on the present motions.  Federal Rules of Civil

Procedure Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the
> motion [for summary judgment] that the party cannot for
> reasons stated present by affidavit facts essential to justify the
> party's opposition, the court may refuse the application for
> judgment or may order a continuance to permit affidavits to be
> obtained or depositions to be taken or discovery to be had or
> may make such other order as is just.

Defendant Virtue requests that this Court reserve ruling on the present motions

until she deposes some of Plaintiff's representatives, without naming who, on "the

reasons why [Plaintiff] insures individuals diagnosed with bipolar disorder in its

individual lines and why it is specifically excluded from the ADA group policy."

Because the information that Defendant Virtue seeks to obtain will not assist in a

determination on the parties' motions, this Court refuses to exercise its discretion

to permit further discovery before ruling on these motions.[1]

---

[1] Notably, Defendant Woldemicael deposed a number of Plaintiff's representatives, including Janice Schaefer, Plaintiff's underwriter who handled Decedent's applications; Robert Lambrick, Plaintiff's chief underwriter for the ADA group; Susan Donahue, the administrative specialist aide for the ADA; and Gina Goodreau, Plaintiff's Associate Manager of the ADA Life and Disability claims.

## B. Policy Coverage Subject to Contest

Illinois requires by statute that group life insurance policies in the state must contain a provision indicating that the Policy may be contested within two years of its issue date.[2] The statute provides that provisions in group life insurance policies must favor the insured and that a policy may not be contested after it has been "in force" for two years from "its date of issue." See Illinois' Insurance Code, 215 ILL. COMP. STAT. 5/231.1 (1967).

The Policy at issue contains such a provision in the certificate. The provision permits policy coverages to be contested within two years from the date that the policy is "in force" or two years following an increase in the policy coverage, as well as two years following the termination and reinstatement of insurance coverage.

On its face, the provision contained in the Policy provides a contestability period that is greater than, though not necessarily in conflict with,

---

[2] Illinois law governs according to the choice of law provision in the Policy, which none of the parties dispute. "In diversity cases, federal courts must apply the conflict-of-law principles of the forum state." S.A. Empresa de Viacao Aerea Rio Grandense v. Boeing Co., 641 F.2d 746, 749 (9th Cir. 1981). In Hawaii, where "'the chosen law has some nexus with the parties or the contract, that law will generally be applied.'" Hawaiian Telephone Co. v. Microform Data Sys., Inc., 829 F.2d 919, 922 (9th Cir. 1987) (quoting Airgo, Inc. v. Horizon Cargo Transport, Inc., 670 P.2d 1277, 1281 (Haw. 1983)). Seeing as the ADA, which established and maintained the Policy, is headquartered in Illinois and none of the parties dispute the applicability of Illinois law, Illinois law properly governs.

the statutory language.  See National Fidelity Life Ins. Co. v. Karaganis, 811 F.2d 357, 362 (7th Cir. 1987) (finding that "if a conflict exists between a contract provision and a statutory provision, the statutory provision governs").  The Illinois statute makes no mention of what occurs when, as here, the Policy was "in force" from a "date of issue," but subsequently was modified to increase the amount of coverage, with the effective modification date extending the two-year period during which the Policy may be contested.  The date of issue may be October 10, 2002, thereby foreclosing Plaintiff's ability to contest the Policy, or it may be February 4, 2003, the date that the Policy increase took effect, thereby permitting the Policy to be contested.  Nor does the Policy indicate what the "date of issue" might be when a reinstatement occurs, as it did here in the Summer of 2003.  By contrast, the provision in the Policy plainly provides that the two-year period starts anew with any increases in the insurance coverage and with any reinstatement.

Although the Policy's provision may be construed as being less favorable to the insured, as Defendant Woldemicael construes it, whether it, in fact, is less favorable is not clear from the face of the statute.  A less favorable provision that, for instance, impermissibly extends the contestability period or makes the provision more onerous, would, as Defendants claim, not be enforceable.  See Mut. Life Ins. Co. of N.Y. v. Wineberg, 49 N.E.2d 44, 48 (Ill. App. Ct. 1943).  Here,

10

whether Plaintiff impermissibly extended the contestability period is not clear because the "date of issue" under the statute is not a defined term.  <u>See generally</u> 215 Ill. Comp. Stat.  5/2 (1937).  Date of issue may be the initial date of issue, as Defendants contend, or it may be the effective date of issue each time that the amount of the Policy is increased or a reinstatement occurs.

In resolving this seeming ambiguity, as the Court must as a matter of law, the Court takes heed of Plaintiff's argument that to construe the statute's date of issue to mean that *only* the initial date of issue can be the relevant date would create an incentive for those seeking insurance to wait until the two-year contestable period runs before increasing their coverage.  <u>See</u> <u>King v. Equitable</u> <u>Life Assur. Soc. of U.S.</u>, 466 N.E.2d 353, 355 (Ill. App. Ct. 1984) (holding that, in Illinois, where an ambiguity exists in an insurance contract, it must be treated as a question of law).  Then, that additional coverage could not be contested.  Where, as here, the insurance company, Plaintiff, requires additional background information pertaining to medical history to authorize additional coverage*,* if the insured waits two years to apply for the additional coverage and makes false statements to induce that additional coverage, the insurer would not be able to contest that coverage.

Defendant Woldemicael views that argument as irrelevant to the facts of this case and argues that it ignores the fact that Plaintiff does not simply rubber

11

stamp increases in coverage.  Indeed, in doing more than merely rubber stamping

policy increases, insurance companies, such as Plaintiff, rely on information

disclosed in the applications in making increase determinations.  If the information

is false, the insurer should have, according to the statute, two years to contest that

fraud, otherwise a situation similar to the one that Plaintiff envisions very well

might occur.

Although contestability provisions are to be construed in favor of the

insured, this Court cannot find that the Illinois' legislature would have passed a

statute that, in fact, would have encouraged and rewarded fraud.  <u>See</u> <u>Collins v.</u>

<u>The Board of Trustees of the Firemen's Annuity & Benefit Fund of Chicago</u>, 610

N.E.2d 1250, 1253 (Ill. 1993) ("A statute capable of two interpretations should be

given that which is reasonable and which will not produce absurd, unjust,

unreasonable or inconvenient results that the legislature could not have intended.").

If the goal of the statute is to allow two years after the policy has been in force to

contest coverage , as it reads on its face, a reasonable interpretation of the statute is

to allow an insurer to contest a policy increase from the "date of issue" of that

increase where fraud may have been used to induce that increase.

Nonetheless, the issue is a bit thornier in the instant case because the

"Certificate Effective Date" on the Policy increase remained the same (October 10,

2002), possibly leading Defendant Woldemicael to view Plaintiff's position as irrelevant on the facts of this case.[3]  Consequently, the initial coverage date, October 10, 2002, may be the only date of relevance here (without touching on the issue of reinstatement).  That the Certificate Effective Date on the Policy increase remained the same as that on the Policy does not, however, change the underlying rationale for interpreting the statute as starting the two-year period anew following a policy increase.

The fact that the Policy increase required additional medical information that Decedent could have disclosed, but chose not to, poses a problem similar to that contemplated by Plaintiff.  That problem reasonably could be avoided under the statute with a somewhat broader interpretation of "date of issue," which this Court adopts on the facts of this case.  Where, as here, an increase in policy coverage requires additional medical information that creates new opportunities for disclosure and where an insured's medical history changes following the initial policy application and before the increase, any perceived failure to disclose may be contested from the date on which the policy increase became effective.  This Court, therefore, finds that Plaintiff's contestability

---

[3] This Court sets aside for the moment the fact that, under the heading "Benefit Information" on the front page of the Policy increase and underneath the Certificate Effective Date, the "effective date" of the policy increase was noted as November 4, 2003.

13

provision in the Policy that does not allow "the insurer to contest any increase in [an insured's] insurance [after it] has been in force for 24 months during his lifetime" is compatible with the statute and provides another "date of issue" by which Plaintiff may contest the reissue coverage.[4]

Plaintiff next argues that it should be able to contest the entire $1,000,000.00 under a reinstatement theory because the entire coverage terminated on July 1, 2003 upon non-payment of the premium and a new "date of issue" was formed upon reinstatement.

Defendant Woldemicael recognizes that Illinois law is unsettled regarding contestability periods following reinstatement of policies. Compare Dorval v. Guarantee Trust Life Ins. Co., 31 N.E.2d 385 (Ill. App. Ct. 1941) (finding that the insurance company could not contest a policy after the one-year

---

[4] Additionally, Plaintiff argues that 28 Ill. Reg. 907 § 1411.50(e) should apply here because it applies equally as well to group life insurance coverage as it does to universal life insurance. Defendants argue that the statute applies only to universal life insurance coverage because it was limited to that particular type of insurance. That regulation provides: "If the policyowner or group certificateholder has the right to change the basic coverage, any limitation on the amount or timing of such change shall be stated in the policy. If the individual policyowner or group certificateholder has the right to increase the basic coverage, the individual policy or group certificate shall state whether a new period of contestability and/or suicide is applicable to the additional coverage." 28 Ill. Reg. 907 § 1411.10, Purpose and Applicability, limits that regulation to universal life insurance: "The purpose of this Part is to supplement the Department's existing regulations on life insurance policies with standards and requirements specifically applicable to all individual and group universal life insurance policies and group certificates except variable universal life policies and group certificates." Because a reasonable interpretation of the statute permits the 2-year contestability period to start anew on a date of reissue, there is no need to decide whether 28 Ill. Reg. 907 § 1411.50(e) applies here.

incontestability period had lapsed even though the reinstatement application contained a false statement), with Cohen v. N.Y. Life Ins. Co., 132 F.2d 494, 497 (7th Cir. 1942) (holding that an insurer may, by proving fraud in the inducement, avoid reinstating a policy even though a similar claim would be precluded under the original contract due to expiration of the contestability period). Notwithstanding, this Court need not determine whether reinstatement under either the Policy's provision or a reasonable interpretation of the statute starts the period anew because this Court finds that the $900,000.00 increase is contestable from the effective date of the Policy increase.

Furthermore, Plaintiff "already admitted that it cannot contest" the $100,000.00; thus, regardless of the reinstatement, that amount still cannot be contested.  Plaintiff's claim examiner admitted that only "90% of the insurance coverage was in force less than 24 months."  The claim examiner made that statement fully informed of the Policy lapse and of the subsequent reinstatement, which Plaintiff admits.  Although Plaintiff points to a subsequent letter in which Gina Goodreau, Plaintiff's Associate Manager, set forth reasons for contesting the entire $1,000,000.00 in her denial letter, that letter was not enough to retract the implied waiver by Plaintiff's claim examiner.

15

Plaintiff disputes, however, that the statement constitutes a waiver of its rights because "the letters did not state that [Plaintiff] would either waive the contestable provision as to any portion of the coverage or that it would pay any portion of the coverage."  "A party to a contract may waive, by express agreement or by its course of conduct, its legal right to strict performance of the terms of a contract."  Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc., 654 N.E.2d 1109, 1118 (Ill. App. Ct. 1995).  "The waiver doctrine is intended to prevent the waiving party from lulling another into a false belief that strict compliance with a contractual duty will not be required and then suing for noncompliance."  Id.  "There must be either an intention to waive which, while unexpressed, can be clearly inferred from the circumstances, or where there is no such intention, the conduct of one party must have misled another into acting on a reasonable belief that a waiver has occurred."  Lavelle v. Dominick's Finer Foods, Inc. of Ill. 592 N.E.2d 287, 292 (Ill. App. Ct. 1992).  The claim examiner's express statement in a letter on which Defendants were carbon copied that only 90% of the Policy was contestable serves as sufficient conduct that led Decedent reasonably to believe that a waiver had occurred and that he would be entitled, at least, to $100,000.00 of the life insurance.

16

Accordingly, this Court GRANTS Defendant Woldemicael's summary judgment motion, and Defendant Virtue's joinder thereto, that Plaintiff cannot contest the $100,000.00 issued under the Policy because the two-year period of contestability had run during Decedent's lifetime.  This Court DENIES Defendant Woldemicael's motion for the $900,000.00 Policy increase because that policy became effective within the two-year contestability period, and GRANTS Plaintiff's motion insofar as it relates to the contestability of that portion of the Policy.

**C.  Misrepresentation and Concealment**

Plaintiff has moved for summary judgment on its misrepresentation claim.  Because there are factual matters in dispute that cannot be resolved on the motion, this Court DENIES Plaintiff's motion.

Plaintiff relies on Illinois' misrepresentation statute, which provides in pertinent part:  "No such misrepresentation or false warranty [in the policy or in the written application] shall defeat or avoid the policy unless it shall have been made with <u>actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company</u>."  215  ILL. COMP. STAT. 5/154 (1937) (emphasis added).  In the instant case, there is a factual dispute concerning whether Decedent made a misrepresentation and whether, if he did, there was an intent to

17

deceive OR whether the misrepresentation materially affected Plaintiff's acceptance of the Policy and/or the Policy increase.

Intent to deceive is a question of fact that is not proper to determine on a motion for summary judgment.  "The purpose of summary judgment is not to try a question of fact, but to determine if one exists."  Golden Rule Ins. Co. v. Schwartz, 786 N.E.2d 1010, 1014 (Ill. 2003); see also National Boulevard Bank v. Georgetown Life Ins. Co., 472 N.E.2d 80, 88 (Ill. App. Ct. 1984).  Whether Decedent had an intent to deceive is a factual dispute that would be improper for this Court to determine at this stage.

Plaintiff argues that whether Decedent's misrepresentation materially affected its acceptance of Decedent's Policy can be treated as a matter of law.  In support, Plaintiff cites TIG Ins. Co. v. Reliable Research Co., 334 F.3d 630, 635 (7th Cir. 2003), in which the district court, in the trial proceedings, had determined the materiality of a misrepresentation as a matter of law and the Seventh Circuit reviewed that determination.  See TIG Ins. Co. v. Reliable Research Co., 228 F. Supp. 2d 921, 928 (S.D. Ill. 2002).  Notwithstanding, in the District Court's Memorandum and Order, it noted that "[o]rdinarily, the materiality of a misrepresentation is a question of fact."  Id. at 928; see also Nat'l Boulevard Bank, 472 N.E.2d at 88.  "However, where the misrepresentation is of such a nature that

all would agree that it is or is not material, the question is appropriate for summary

judgment." Id. at 928.  In TIG, the court found that "all would agree" that the

existence of a lawsuit and a permanent injunction against the defendant, a title

company seeking Title and Escrow Liability insurance, that were not disclosed

would lead a reasonably careful and intelligent person to believe that those events

would have increased the chances that the application would have been rejected.

See id.  One of the suits for which the defendant sought coverage actually was

instituted in part because of the defendant's alleged violation of the injunction.

See id.  Thus, "all would agree" in that case that the misrepresentation would be

material.

By contrast, the misrepresentation in the instant case, assuming that

there is a misrepresentation, is not of a such a nature that "all would agree that it is

or is not material."  Plaintiff states that "[i]t is undisputed that [Plaintiff] would not

have issued any of the insurance if it had known of the bipolar condition."  It bases

this claim predominantly on the deposition testimony of Mr. Robert Lambrick,

Plaintiff's chief underwriter for the ADA group, who claimed that his

"underwriters have never accepted an application from anyone with a bipolar

condition, and they know that they do not," that is, that they are not supposed to

accept such applications.  Furthermore, Plaintiff contends that, even if in

19

remission, Decedent's condition would have had to have been in remission for twenty years before it could have been considered an acceptable risk under the ADA Plan.  Additionally, Plaintiff questions how Decedent's condition could be in full remission when Decedent was receiving ongoing lithium treatment.

Defendants' disagree.  Defendant Virtue argues that the fact that Decedent's doctor found that Decedent's bipolar condition was in "full remission" makes Decedent's non-disclosure less material, not to mention that there is a question of fact concerning "whether there was actually a policy to deny life insurance to individuals with bipolar disorders."  Defendant Woldemicael similarly alleges that Plaintiff was stable for fourteen years, that he may never have had a bipolar condition and that, to the extent that he may have had one, it was in full remission.  Defendant Woldemicael likewise agrees that Plaintiff's unwritten policy is "inconsistent and do[es] not automatically lead to the conclusion that [Plaintiff] was ineligible for coverage under the ADA Plan."

Based on the material presented, this Court finds that this is not one of the exceptional cases as in TIG where "all would agree" that the misrepresentation is or is not material.  Rather, it is one of the typical cases where "the materiality of a misrepresentation is a question of fact" that is inappropriate to address on summary judgment.  TIG Ins. Co., 228 F. Supp. 2d at 928.

### D. Defendant Woldemicael's counterclaims

Plaintiff requests summary judgment on Defendant Woldemicael's counterclaims, arguing that they should be dismissed for lack of a factual basis or law to support her claims. This Court agrees and GRANTS summary judgment on the counterclaims. Defendant Woldemicael brought four counts in her counterclaim: (1) breach of insurance contract, (2) tort of bad faith, (3) violation of Illinois Insurance Code and Insurance Director's Regulations, and (4) violation of the Illinois Consumer Fraud Statute, without citing any law. This Court considers each in turn.

First, in Defendant Woldemicael's counterclaim and in her response to Plaintiff's summary judgment motion, she fails to cite any law for her breach of contract claim. She, likewise, provides insufficient factual allegations on which to base a claim. Her only claim is that Plaintiff "violated its contract with [Decedent] by improperly inventing or exaggerating an unwritten policy to deny [Decedent] promised benefits under the Policy." Defendant has failed to provide the court with anything on which her breach of contract claim could move forward.

Second, Defendant concedes that her bad faith claim was usurped by 215 ILL. COMP. STAT. 5/155; thus, that claim is dismissed.

Third, Defendant alleges a violation of the Illinois Insurance Code

under 215 ILL. COMP. STAT. 5/155.  That section of the Code deals with attorney

fees, providing:

> (1) In any action by or against a company wherein there
> is in issue the liability of a company on a policy or
> policies of insurance or the amount of the loss payable
> thereunder, or for an unreasonable delay in settling a
> claim, and it appears to the court that <u>such action or delay
> is</u> <u>vexatious and unreasonable</u>, the court may allow as
> part of the taxable costs in the action reasonable attorney
> fees, other costs, plus an amount not to exceed any one of
> the following amounts:  . . .

(Emphasis added.)  No other citations are provided.  She cites one case in her

response (and none in her counterclaim), <u>Buais v. Safeway Ins. Co.</u>, 656 N.E.2d

61, 63-64 (Ill. App. Ct. 1995), for the proposition that a court must look to the

totality of the circumstances when determining whether an insurer's conduct is

vexatious.  That case dealt with "a policyholder's claim that his insurance company

refused to evaluate, investigate, or even talk about a claim where there was no

*bona fide* dispute about coverage."  <u>Id.</u> at 64-65. That is not the type of conduct

that Defendant alleges here.  Defendant merely claims that Plaintiff's unreasonable

delay in paying her claim on the Policy constitutes vexatious conduct, which, on

22

the facts of this case, this Court does not find as sufficient to support a claim under 215 ILL. COMP. STAT. 5/155.[5]

       Fourth, in the alternative to her claim under 215 ILL. COMP. STAT. 5/155, she asserts a violation of the Illinois Consumer Fraud Statute.  She states no facts in support of that claim in her response to Plaintiff's motion, and, in her counterclaim, she merely alleges that, based on the facts noted therein, Plaintiff's acts and/or omissions violate the Illinois Consumer Fraud Statute.  As with the claim under 215 ILL. COMP. STAT. 5/155, she has failed to state a basis upon which relief could be granted.  Accordingly, all counterclaims are DISMISSED.

<u>CONCLUSION</u>

       For the reasons stated herein, the Court GRANTS in part and DENIES in part Defendant Woldemicael's Motion for Summary Judgment, which Defendant Virtue joined, and GRANTS in part and DENIES in part Plaintiff's Motion. Plaintiff may contest the $900,000.00 increase in Decedent's term life insurance based on alleged misrepresentations in the insurance application, but it may not contest the $100,000.00 initial term life insurance because the two-year

---

[5] Defendant Woldemicael also states that "this counterclaim meets the 'short and plain statement of the claim' standard required by Fed. R. Civ. P. 8(a)."  That may have been true for the counterclaim, but, in response to Plaintiff's motion for summary judgment, Defendant could have (and should have) elaborated on her argument to support her claim.  Because she failed to support the existence of such a claim with either facts or law, she has failed to provide a sufficient basis on which to move forward.

limitations period has run.  Furthermore, there is a genuine issue of material fact concerning Decedent's alleged misrepresentation in the Policy and in the Policy increase that necessitates trial.  Additionally, Defendant Woldemicael's counterclaims are DISMISSED for failure to provide sufficient facts or law on which to base her claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 30, 2006.



_____
David Alan Ezra
United States District Judge

Great-West Life & Annuity Insurance Company vs. Melissa Virtue, et al., Civil No. 05-00412 DAE-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION